UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEATHER DERENSKI, | CASE NO. C23-0676JLR |
| Plaintiff, | ORDER |
| v. | |
| USAA GENERAL INDEMNITY COMPANY, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant USAA General Indemnity Company's ("USAA") motion for partial summary judgment on Plaintiff Heather Derenski's extra-contractual claims.[1]  (MSJ (Dkt. # 27); Reply (Dkt. # 42).)  Ms. Derenski opposes the motion.  (Resp. (Dkt. # 35).)  The court has considered the parties' submissions, the relevant portions of

---

[1] USAA and Ms. Derenski each filed a motion to exclude expert testimony.  (*See* Dkt. ## 29, 31).)  Because the experts' testimony is not relevant to the issues raised in the instant motion, the court addresses the motions to exclude in a separate order.

ORDER - 1

the record, and the governing law. Being fully advised,[2] the court GRANTS in part and DENIES in part USAA's motion.

## II.    BACKGROUND

On March 20, 2018, Ms. Derenski suffered injuries in a three-car collision in which an underinsured motorist ("UIM") was at fault. (Compl. (Dkt. # 1-3) ¶¶ 2.1-2.5.) Ms. Derenski was insured by USAA under a personal automobile policy having a personal injury protection ("PIP") coverage limit of $25,000 per person and a UIM coverage limit of $300,000 per person or $500,000 per accident. (Tredway MSJ Decl. (Dkt. # 28) ¶ 2, Ex. 1 at 6.[3]) On April 9, 2018, Ms. Derenski reported the accident to USAA, which assigned a PIP medical adjuster to her claim. (*Id.* ¶ 3, Ex. 2 ("Claim Notes") at 4-5[4]; *see also id.* ¶ 4, Ex. 3 (April 11, 2018 letter from USAA to Ms. Derenski).)

Ms. Derenski submitted her claim to USAA on April 17, 2018. (Claim Notes at 6.) She advised that the at-fault driver's insurance was "taking care of [her] vehicle damage," and reported that she had seen her primary care provider and received physical therapy and a prescription for massage. (*See id.*) The PIP adjuster contacted Ms. Derenski the following day to request additional information about her injuries and

---

[2] Neither party requests oral argument, and the court concludes oral argument would not assist it in its resolution of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[3] The court refers to the page numbers in the CM/ECF header when citing exhibits to Ms. Tredway's declaration.

[4] Although USAA refers to pages of the Claim Notes by Bates number, it did not organize the pages in its exhibit by Bates number. Therefore, the court refers to the page numbers in the CM/ECF header for ease of reference.

ORDER - 2

treatment, and USAA began making payments on April 19, 2018. (Claim Notes at 7, 2.) On May 10, 2018, Ms. Derenski reported she had suffered whiplash; a possible concussion; pain in her right hip, low back, and neck; a contusion on her abdomen from her seatbelt; and gastrointestinal issues due to pain. (*Id.* at 8-9.)

In April 2019, after Ms. Derenski complained of denied medical payments, USAA obtained an independent medical record review. (*See* Claim Notes at 3; Tredway MSJ Decl. ¶ 6, Ex. 5 (email to Ms. Derenski).) The reviewer opined that the treatment Ms. Derenski had been receiving since January 2, 2019, was "not related to the motor vehicle accident" and was "not reasonable or medically necessary[.]" (Tredway MSJ Decl. ¶ 7, Ex. 6 at 7.) At some point, however, USAA reversed its denial of medical payments. (*See id.* ¶ 8, Ex. 7 (listing PIP payments).) In total, USAA paid Ms. Derenski $11,407.96 in PIP benefits. (*See id.* at 9.)

In a letter dated January 26, 2021, Ms. Derenski's attorney advised USAA that the at-fault driver had only $25,000 in liability coverage; that Ms. Derenski intended to settle with the at-fault driver for policy limits; and that Ms. Derenski intended to pursue a UIM claim. (Tredway MSJ Decl. ¶ 9, Ex. 8.) In response, USAA opened a UIM claim, assigned a UIM adjuster, and waived its subrogation rights. (*Id.* ¶ 10, Ex. 9.) It asked counsel to provide information about Ms. Derenski's injuries and treatment and noted that it did not possess any recorded statements, vehicle damage repair estimates, or accident reconstruction reports. (*Id.*) Between March 3 and October 5, 2021, USAA sent nine letters to Ms. Derenski's attorney following up on its request for information about Ms. Derenski's injuries and treatment. (*See generally id.* ¶ 16, Ex. 15.) Although

1  counsel contacted USAA on April 30, 2021, to inform it that Ms. Derenski was receiving
2  injections and physical therapy, he did not respond to USAA's requests for medical bills
3  and records. (*Id.* ¶ 16.)

4        On October 26, 2021, Ms. Derenski's attorney sent a UIM demand package to
5  USAA. (Tredway MSJ Decl. ¶ 17, Ex. 16 ("Demand").) The demand letter described
6  Ms. Derenski's injuries, recounted her treatment through June 2020, and discussed the
7  ways her injuries had caused her to suffer ongoing pain, loss of enjoyment of life, and
8  harm to her relationships with her husband and three young children. (*Id.* at 3-9.) The
9  package also included copies of medical records and bills totaling $13,458.44, along with
10 a request for reimbursement of $10,339.32 in out-of-pocket expenses Ms. Derenski
11 asserted were necessary to accommodate her injuries. (*Id.* at 7, *see also id.* Exs. 2-11.)
12 The demand letter did not include a settlement proposal. (*Id.* at 2-10.)

13       On November 10, 2021, USAA responded with a settlement offer of $5,000.
14 (Tredway MSJ Decl. ¶ 19, Ex. 18; *see also* Yager MSJ Decl. (Dkt. # 36) ¶ 7, Ex. 4
15 ("11/10/21 Claim Eval.").) Although USAA did not challenge Ms. Derenski's request
16 for additional medical expenses, it concluded that her out-of-pocket expenses "were not
17 supported by medical documentation or need for the items/services." (11/10/21 Claim
18 Eval. at 3.)

19       Ms. Derenski responded through counsel on December 6, 2021. (Tredway MSJ
20 Decl. ¶ 21, Ex. 20.) Her attorney asked USAA to "provide a clear explanation under the
21 facts, the law, and the policy, as to why USAA believes $5,000 is sufficient to make Ms.
22 Derenski whole in this case." (*Id.*) He granted permission for USAA to reach out to Ms.

ORDER - 4

1  Derenski's care providers, offered to have Ms. Derenski provide a statement under oath,
2  and proposed an independent medical examination ("IME"). (*Id.* at 2.)
3       On December 29, 2021, USAA responded that it considered $13,459 "for
4  reasonably related medical bills" and "$16,541 in non-economic damages" in developing
5  its settlement offer. (Tredway MSJ Decl. ¶ 22, Ex. 21.) It did not, however, explain how
6  it determined the value of Ms. Derenski's noneconomic damages. (*See id.*) USAA
7  requested a telephone conference with Ms. Derenski and her husband, the repair estimate
8  for Ms. Derenski's vehicle, and any medical bills or records postdating June 3, 2020, but
9  it rejected Ms. Derenski's offer to conduct an IME. (*Id.*) In January 2022, having not
10 received a repair estimate from Ms. Derenski, USAA obtained that information from the
11 at-fault driver's insurer. (*See* Claim Notes at 15.)
12      USAA interviewed Ms. Derenski on March 30, 2022. (Yager MSJ Decl. ¶ 9, Ex.
13 6 (summary of interview).) Shortly thereafter, USAA raised its claim value estimate to
14 between $25,000 and $35,000 and increased its settlement offer to $25,000, "based on the
15 $13,459 in submitted medical bills and $36,459 in non economic damages." (Tredway
16 MSJ Decl. ¶ 31, Ex. 30); *see also* Yager MSJ Decl. ¶ 8, Ex. 5 ("4/6/22 Claim Eval.").)
17 USAA again did not explain how it valued the noneconomic damages. (Tredway MSJ
18 Decl. Ex. 30.) Between April 20, 2022 and December 13, 2022, USAA sent 11 letters to
19 Ms. Derenski's attorney seeking a response to the outstanding settlement offer, but
20 counsel never wrote back. (*See* Tredway MSJ Decl. ¶¶ 32-35, Exs. 31-34.)
21      At some point, Ms. Derenski retained new counsel, Leah Snyder, who sent a letter
22 of representation to USAA on December 15, 2022. (Tredway MSJ Decl. ¶ 36, Ex. 35.)

1  Ms. Snyder asked USAA for copies of "any and all communication regarding this
2  matter[,]" along with a copy of Ms. Derenski's insurance policy. (*Id.*) USAA
3  acknowledged the change of counsel the next day. (*Id.* ¶ 37, Ex. 36.) On January 6,
4  2023, USAA sent a letter to Ms. Snyder advising that Ms. Derenski's claim remained
5  unresolved pending a response to the April 2022 settlement offer. (*Id.* ¶ 38, Ex. 37.) On
6  February 22, 2023, USAA requested copies of medical bills and medical records, stating
7  that it would review "all claims evidence . . . for a final decision" after receiving those
8  documents. (*Id.* ¶ 39, Ex. 38; *see also id.* ¶ 40, Ex. 39 (2/22/23 followup letter).)

   On February 28, 2023, Ms. Derenski sent USAA a 20-day notice letter pursuant to
10 the Washington Insurance Fair Conduct Act, ch. 48.30 RCW ("IFCA"). (Yager MSJ
11 Decl. ¶ 10, Ex. 7.) She demanded payment of the $300,000 policy limits and asserted
12 that USAA had violated its duties pursuant to Washington insurance regulations,
13 including WAC 284-30-330 (governing claims handling); WAC 284-30-370 (governing
14 investigations); and WAC 284-30-380 (governing settlements). (*Id.* at 2.)

15 USAA responded to the IFCA letter on March 13, 2023. (Yager MSJ Decl. ¶ 11,
16 Ex. 8.) It asserted that "[t]hroughout the life of the claim," it had "done a thorough
17 investigation . . . to include Mrs. Derenski's injuries" and that "it arrived at a fair and
18 reasonable value" to settle her UIM claim "[b]ased on the medical records and billing
19 provided by Mrs. Derenski's prior attorney[.]" (*Id.*) In response to Ms. Derenski's
20 assertion that USAA had improperly failed to take certain medical records into account,
21 USAA averred that it had "evaluated and considered" all of Ms. Derenski's "medical bills
22 and records" in valuing her claim and had "attempted to negotiate in good faith" but

never received a counter demand. (*Id.*)  Finally, USAA expressed its continued interest in negotiating a settlement and reiterated its $25,000 offer. (*Id.*)

Rather than respond to USAA's letter, Ms. Derenski filed this action in King County Superior Court on April 6, 2023. (Compl. at 1.)  USAA removed the case to this court on May 9, 2023. (Not. of Removal (Dkt. # 1).)  Ms. Derenski raises claims against USAA for breach of contract; violation of the IFCA; insurance bad faith; and violation of the Washington Consumer Protection Act ("CPA"), ch. 19.86 RCW. (Compl. ¶¶ 3.1-6.12.)  She seeks as damages:

> the total of benefits provided under [her] insurance policy, costs, fees, expenses, treble damages as authorized by the [CPA], treble damages as authorized by IFCA, the stress of having to go through an overlong claims process, delay in receiving insurance payments that are owed to [her], lack of access to insurance payments that are owed to [her], including $25,000 in undisputed amount, having to pay $10,340 dollars out-of-pocket for items necessary to help [her] deal with [her] continuing pain and injury, inconvenience, distress, expense incurred in investigating USAA's unfair and deceptive acts, including the cost of postage to send an IFCA notice to the Insurance Commissioner, and other general damages.

(Yager MSJ Decl. ¶ 12, Ex. 9 ("Derenski Decl.") ¶ 6.)

USAA now moves for summary judgment on Ms. Derenski's extra-contractual claims for violation of the IFCA, bad faith, and violation of the CPA. (MSJ.)  Ms. Derenski filed a timely response, and USAA filed a timely reply. (Resp.; Reply.)  The motion is now ripe for decision.

### III.    ANALYSIS

Below, the court sets forth the standard of review and then considers USAA's motion for summary judgment.

ORDER - 7

A.    **Standard of Review**

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). If the moving party meets this burden, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. The court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motions." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up). It may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (cleaned up).

**B.      Insurance Fair Conduct Act**

The court begins with Ms. Derenski's IFCA claim. The IFCA provides a cause of action to a first-party insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer[.]" RCW 48.30.015(1). A regulatory violation is not enough, on its own, to sustain a claim under the IFCA. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389 P.3d 476, 483 (Wash. 2017). Rather, the plaintiff must establish that the insurer unreasonably denied coverage or benefits. *Id.*

USAA argues that summary judgment is warranted because it neither denied Ms. Derenski's UIM claim nor refused to pay benefits, and even if it had, Ms. Derenski has not suffered damages cognizable under the IFCA. (MSJ at 17, 19-24.) Ms. Derenski counters that USAA unreasonably denied payment of her UIM benefits by making settlement offers based on a faulty investigation and evaluation of her claim and by failing to pay undisputed amounts owed. (*See* Resp. at 12-15.) The court first considers whether USAA has met its burden to show that there is no dispute of material fact as to whether it unreasonably denied payment of benefits, then considers Ms. Derenski's claimed damages.

   1.      Unreasonable Denial of Payment

At the outset, the court grants USAA's motion for summary judgment to the extent Ms. Derenski bases her claim on USAA's alleged failure to pay purportedly undisputed amounts of benefits owed. (*See, e.g.*, Resp. at 14-15.) The court agrees with USAA that Ms. Derenski has not provided any evidence that either party ever characterized the settlement offers as undisputed amounts or that her attorneys asked USAA to pay any

sum as an undisputed amount. (*See* Reply at 3-4; *see generally* Resp.) Because Ms. Derenski has not established a genuine dispute of material fact as to whether USAA refused to pay an undisputed amount, summary judgment on this theory is warranted.

The court, however, denies USAA's motion to the extent Ms. Derenski bases her claim on an unreasonable offer of settlement. "[T]he 'payment of benefits' prong of [the] IFCA covers scenarios where an insurer makes an unreasonably low offer." *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017) (collecting cases). An offer is so low as to effectively deny payment of benefits when the amount offered "is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue[.]" *Tiev v. Standard Fire Ins. Co.*, No. C23-0950JNW, 2024 WL 4417347, at *5 (W.D. Wash. Oct. 4, 2024) (quoting *Morella v. Safeco Ins. Co. of Ill.*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013)).

USAA asserts that its offers were reasonable as a matter of law based on the information it knew when it made the offers. (*See, e.g.*, MSJ at 21-23 (listing information known to USAA in November 2021 and April 2022).) Ms. Derenski responds that USAA's evaluation was incomplete because it failed to conduct a reasonable investigation to uncover additional facts material to the value of her claim. (*See, e.g.*, Resp. at 13-15.) She relies heavily on the report of her claims-handling expert, Richard Dykstra, who opines, with detailed citations to evidence, that USAA "failed to follow customary claims handling practices" relating to investigation, evaluation, settlement

negotiation, and documentation in valuing Ms. Derenski's claims and extending its offers. (*Id.* at 4-8 (citing Yager MSJ Decl. ¶ 5, Ex. 2 ("Dykstra Report")); *see also* Dykstra Report at 5-14 (discussing USAA's November 10, 2021 offer); *id.* at 14-19 (discussing USAA's April 7, 2022 offer).) Having reviewed Mr. Dykstra's expert report and the cited evidence, the court concludes that Ms. Derenski has established a genuine dispute of material fact regarding whether USAA acted unreasonably in the course of handling and valuing Ms. Derenski's claim.[5]

2. Damages

USAA's argument that Ms. Derenski cannot establish damages cognizable under the IFCA also fails. A prevailing IFCA plaintiff is entitled to "actual damages sustained, together with the costs of the action[.]" RCW 48.30.015(1). "Actual damages" includes noneconomic damages, including emotional distress damages, caused by the denial of benefits. *Beasley v. GEICO Gen. Ins. Co.*, 517 P.3d 500, 516-17 (Wash. Ct. App. 2022), *rev. denied*, 523 P.3d 1188 (Wash. 2023). Here, Ms. Derenski avers that her damages include, among other items, "the stress of having to go through an overlong claims process," lack of access to insurance payments, and out-of-pocket costs for items she needed to manage her pain and injury. (Derenski Decl. ¶ 6.) Because a jury could reasonably find that these damages were caused by USAA's unreasonable failure to pay

---

[5] Although USAA broadly proclaims that Mr. Dykstra's "assertions" are "conclusory," it has not moved to exclude Mr. Dykstra's testimony. (*See* Reply at 3, 5.) Therefore, the court considers Mr. Dykstra's expert opinions in deciding this motion.

1  Ms. Derenski's full UIM benefits, the court denies USAA's motion for summary
2  judgment on Ms. Derenski's IFCA claim.

3  **C.   Bad Faith**

4  Next, USAA asserts that the court should grant summary judgment in its favor on
5  Ms. Derenski's bad faith claim because "USAA's conduct was reasonable at all times"
6  and Ms. Derenski was not damaged as a result of any alleged bad faith conduct.  (MSJ at
7  17, 24-27.)  To establish bad faith, the insured must show the insurer's breach of its duty
8  of good faith was "unreasonable, frivolous, or unfounded."  *Smith v. Safeco Ins. Co.*, 78
9  P.3d 1274, 1277 (Wash. 2003).  Because "[w]hether an insurer acted in bad faith is a
10 question of fact[,]" an insurer is entitled to summary judgment "only if there are no
11 disputed material facts pertaining to the reasonableness of the insurer's conduct under the
12 circumstances."  *Id*.  A prevailing plaintiff on an insurance bad faith claim can recover
13 "expenses; consequential damages; and 'general tort damages,' including noneconomic
14 damages such as emotional distress caused by the breach of the duty of good faith."
15 *Beasley*, 517 P.3d at 514 (citations omitted).

16 Here, Ms. Derenski's bad faith claim is based on the same conduct underlying her
17 IFCA claim:  USAA's purported failure to reasonably investigate and evaluate her UIM
18 claim, which resulted in unreasonably low settlement offers.  (*See* Resp. at 9-11, 13-15.)
19 Because an insurer's unreasonable denial of payment supports claims for bad faith as
20 well as for violation of the IFCA, the same issues of fact that preclude summary
21 judgment on Ms. Derenski's IFCA claim also apply to her bad faith claim.  *See Tiev*,
22 2024 WL 4417347, at *5.  Further, Ms. Derenski has established a genuine dispute of fact

regarding damages based on her averment that she has suffered emotional distress, among other damages, as a result of USAA's failure to pay benefits. (Derenski Decl. ¶ 6.) Because the record, construed in Ms. Derenski's favor, would support a jury's conclusion that USAA's claims handling conduct resulted in the "unreasonable, frivolous, or unfounded" denial of UIM benefits, *Smith*, 78 P.3d at 1277, the court denies USAA's motion for summary judgment on Ms. Derenski's bad faith claim.

**D.  Consumer Protection Act**

Finally, USAA argues that it is entitled to summary judgment on Ms. Derenski's CPA claim. To prevail on a CPA claim, the plaintiff must establish (1) an unfair or deceptive act or practice by the defendant; (2) occurring in trade or commerce; (3) that had an impact on the public; (4) injury to the plaintiff's business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

USAA argues that the court must dismiss Ms. Derenski's CPA claim because she (1) cannot show that USAA violated any relevant insurance regulations and (2) has not suffered an injury to her business or property as a result of any alleged violations. (MSJ at 17, 28-30.) USAA is wrong. First, as discussed above, Ms. Derenski has established a genuine dispute of material fact regarding her IFCA and bad faith claims, which are based on the same conduct at issue in her CPA claim. (*See* Resp. at 14-15.) Violations of the IFCA and breaches of good faith satisfy the "unfair or deceptive act or practice occurring in trade or commerce" element of a CPA claim. *Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218, 1221 (Wash. 2019) ("It is well established that insureds may bring

private CPA actions against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations."); RCW 48.30.010(1)-(2) (providing that practices prohibited by ch. 48.30 RCW and insurance regulations are "unfair or deceptive acts or practices"). Further, a jury viewing the evidence in the light most favorable to Ms. Derenski could also reasonably find that USAA violated insurance regulations governing investigations, evaluations, negotiations, and settlements. (*See generally* Dykstra Report); *see Industr. Indem. Co. of the Nw. v. Kallevig*, 792 P.2d 520, 529 (Wash. 1990) (holding a single violation of WAC 284-30-330 may support a CPA claim).

Second, Ms. Derenski has established a genuine issue of material fact as to whether she suffered an "injury to business or property" within the meaning of the CPA. The Washington Supreme Court has held that "the deprivation of contracted-for insurance benefits is an injury to 'business or property' regardless of the type of benefits secured by the policy." *See Peoples*, 452 P.3d at 1222. As discussed above, a reasonable juror could conclude that USAA unreasonably denied payment of Ms. Derenski's UIM benefits, which would satisfy the "injury to business or property" element. Therefore, the court denies USAA's motion for summary judgment on Ms. Derenski's CPA claim.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part USAA's motion for partial summary judgment (Dkt. # 27). Specifically, the court

//

//

//

1  GRANTS USAA's motion for summary judgment on Ms. Derenski's claims to the extent
2  they are based on a purported failure to pay undisputed amounts, and DENIES the motion
3  in all other respects.
4     Dated this 10th day of December, 2024.

                                JAMES L. ROBART
                                United States District Judge

ORDER - 15